## WOODS et al. v. SIMMS et al.

### No. 5764.

Court of Appeal of Louisiana.

Second Circuit.

March 8, 1939.

Cawthorn, Golsan & Tooke, of Mansfield, for appellants.

S. M. Atkinson and L. E. Colvin, both of Mansfield, for appellees.

DREW, Judge.

For a cause of action petitioners, Louis Woods, Neviel Woods and John Woods, alleged as follows:

"1. That they are the true and lawful owners of an undivided one-half interest in and to the property described as lying and being situated in the Parish of DeSoto, State of Louisiana, and being more fully described as follows: The S½ of the NE¼ and the N½ of the SE¼ of Section 9, Township 11 North, Range 11 West.

"2. That petitioners acquired and became the owners of the said undivided one-half interest in and to the above described property in the following manner, to-wit:

"(a) By inheritance, they being the three children and sole surviving heirs from Joe DuBois, the father of petitioners. He having died on the —— day of ———, in the year ———.

"(b) Joe DuBois having acquired their undivided one-half interest in and to the above described property by a patent issued by the United States Government to his wife and partner in community, Martha A. Trammell DuBois, under date of August 19, 1912, and recorded in Book 31 of the Conveyance Records at page 436 of the records of DeSoto Parish, Louisiana.

"3. That Joe DuBois, father of petitioners, was married to and living with Martha A. Trammell DuBois at the time that she

made the final proof and the final certificate entitling her to patent on the above described land was issued and that the said property became the property of the community of acquets and gains existing between the said Joe DuBois, father of petitioners, and Martha A. Trammell DuBois, the wife of the said Joe DuBois and the step-mother of petitioners.

"4. That under date of October 17, 1913, by an instrument which purported to be a donation inter vivos, Martha A. Trammell DuBois gave to her grandchildren, children of her only son, Henry Y. Simms, the above described property, retaining in herself a usufruct for the period of her natural life.

"5. That Joe DuBois entered into the above described instrument, which is recorded in Book V at page 259 of the Conveyance Records of DeSoto Parish, Louisiana, for two purposes: First: He aided, assisted and authorized his wife therein. Second: He apparently attempted to divest himself of his interest in the above described property.

"6. That the said Joe DuBois in the said purported donation swore that the above described property was the separate and paraphernal property of his wife, Martha A. Trammell DuBois, and was acquired with her own separate funds.

"7. That the statements aforesaid, sworn to by the said Joe DuBois were untrue and incorrect as is evidenced by the fact that he swore that the land above described was acquired with the separate funds of Martha A. Trammell DuBois when it is a fact of which the Court will take judicial cognizance that there is no monetary consideration for the issuance of patent by the United States Government, the only money being the payment of the various and sundry fees incident to the issuance of the patent.

"8. That Clyde Williams Simms, of DeSoto Parish, Louisiana; Mr. John W. Permenter, husband of Josie Lee Simms and Mrs. John W. Permenter, born Simms, wife of John W. Permenter, both of Shelby County, Texas, and Stephen B. Young, husband of Eliza Simms, and Mrs. Stephen B. Young, born Simms, wife of Stephen B. Young, both of Gregg County, Texas; Mazy Maydel Simms, of Longview, Texas, and Hazel Odessa Simms, of Shreveport, Louisiana, all claiming either through the purported donation, as described in paragraph 4, or through mesne conveyances from the grantees in said instrument, are in the actual physical possession of the whole of said 160 acres, without any title whatsoever to the undivided one-half interest which belongs to petitioners and that they, the said defendants, refuse to deliver possession of the said undivided one-half interest to your petitioners without any good or legal cause of such refusal.

"9. That petitioners have demanded of the defendants that the said defendants recognize them as the owners of an undivided one-half interest in and to the land hereinabove described, which the said defendants have refused and do refuse to do."

They pray that the defendants recognize them as the owners of an undivided one-half interest and be ordered to deliver such interest in said property to them.

Defendants answered and admitted they were in actual physical possession of the land involved herein. They denied that plaintiffs owned any interest therein. They admitted a patent to said land was issued to Martha A. Trammell DuBois under date of August 19, 1912, at which time she was married to and living with Joe DuBois They further admitted that the patentees, by donation inter vivos, gave to her grandchildren the land in question by an instrument dated October 17, 1913, and that Joe DuBois joined in said act and swore that the property was the separate paraphernal property of his wife and acquired with her own separate funds. They denied that plaintiffs are the heirs of Joe DuBois and denied all the other material allegations of the petition. They further answered as follows:

"(a) That Mrs. Martha A. Trammell DuBois was the grandmother of all these respondents, excepting John W. Permenter and Stephen B. Young; and that Henry Y. Simms was the only son and child of the said Mrs. Martha A. Trammell DuBois, being issue of her marriage to her husband, ―――― Simms, deceased.

"(b) That on or about August 16, 1880, the said Mrs. Martha A. Trammell, previous to her marriage, settled upon and actually occupied the described land, for the purpose of entering the same under the homestead laws of the United States, and that said land was then open public lands.

"(c) That said Mrs. Martha A. Trammell continued thereafter to reside upon and occupy said premises, erecting a dwelling house thereon, with kitchen, crib, gar-

den, and that by the year 1890, 40 acres of such land was in cultivation.

"(d) That on or about August 16, 1890, Martha A. Trammell applied to enter the described land under the homestead laws of the United States.

"(e) That the New Orleans Pacific Railway Company, acting under the provisions of the· grant from the United States, Act of March 3, 1871, 16 Stat. 579, and Act of February 8, 1887, 24 Stat. 391, made a selection as to a portion of said land and obtained patent therefor August 8, 1889.

"(f) That on or about June 6, 1891, a hearing was held before officials of the United States Land Office, in a contest filed by the said Martha A. Trammell, and after due proceedings, there resulted a final decree of the Commissioner of the General Land Office, in favor of the said Martha A. Trammell under her homestead entry; but suspending proceedings thereon pending a reconveyance from the said Railway Company in order to clear the proceedings.

"(g) That said Martha A. Trammell thereafter completed the proceedings under said homestead entry, resulting in the issuance of the patent above mentioned.

"(h) That during the said period of suspension and contest, to-wit: about the year 1895, the said Martha A. Trammell was married unto the said Joe W. DuBois; but that, under the terms of the laws of the United States then in effect, the United States had donated and granted unto the said Martha A. Trammell the rights of preemption which resulted in the decision in her favor in the aforesaid contest, and which became her separate and paraphernal property.

"(i) That said Martha A. Trammell became entitled to a patent for said land from the United States, by virtue of the foregoing circumstances, long prior to her marriage unto said Joe DuBois; and that if the final proof and final certificate were made and dated subsequent thereto, the same was the result merely of the suspension due to the contest with the NOP Railway as aforesaid; and that, equitably and legally, said property when finally patented became her own separate estate.

"(j) That the said Joe DuBois recognized said facts and the equities resulting therefrom, and by the above mentioned act of conveyance, formally renounced and released any claim or right in and to said land, or to contend that the same was and

is community property; and further, that he and anyone claiming under him as heir, is estopped from denying the averments of said conveyance.

"(k) That the said Martha A. Trammell died intestate during the year 1926, and that the said Joe DuBois died intestate during the year 1931; and that the persons named in the foregoing mentioned act of conveyance, being children of Henry Simms, were the sole surviving descendants and heirs at law of Martha A. Trammell DuBois.

"(l) That your respondent, John W. Permenter, purchased and acquired the undivided 1/7th interest of J. B. Simms in said land by warranty deed of date January 6, 1927, and recorded in Book 79 of Conveyances, Folio 137.

"(m) That your respondent, Stephen B. Young, purchased and acquired the undivided 1/7th interest of Mollie Lillian Simms in said land by warranty deed dated the 4th day of September, 1935, and recorded in Book 109 of Conveyances, Folio 441 in the Recorder's Office of DeSoto Parish, Louisiana.

"(n) That your respondents herein and the authors in title of said Permenter and said Young, as above set forth, have held actual, physical possession of said property, as owners, openly and continuously ever since October 17, 1913; and that such possession has been complete and undisturbed during all of said years, particularly during the years 1927 to 1937, both inclusive.

"(o) That during the period of their ownership, respondents and authors in title of Permenter and Young, have paid all of the taxes levied and assessed against said property, amounting to more than $600.00; and in the event of eviction from any portion thereof, respondents are entitled to reimbursement of such taxes, with interest.

"(p) That, in the alternative, respondents plead the prescription of ten years, acquirendi causa, in bar to any asserted rights of the plaintiffs herein."

After trial was had, but before judgment, defendants filed an exception of no cause of action. They also filed a plea of five-year prescription, as provided for by Article 3542 of the Revised Civil Code, applicable to the reduction of donations as being in excess of the disposable portion.

The lower court apparently decided the case on the merits and did not pass on the exception or pleas of prescription. It re-

jected the demands of plaintiffs and they have perfected an appeal to this court.

The case was tried below without the benefit of a court reporter and is before us on a statement of facts furnished by the judge of the lower court. It is as follows:

"This is an action instituted by the plaintiffs named in the original petition, partaking of the nature of a petitory action, seeking to be recognized as the owners of an undivided one-half interest in and to the following described lands, situated in DeSoto Parish, Louisiana, to-wit: S½ of NE¼ and the N½ of the SE¼ of Section 9, Township 11 North, Range 11 West.

"Plaintiffs are prosecuting this suit, under proper orders of the court, allowing them to litigate without the payment of costs as they accrue, or giving bond therefor.

"At the time of the trial of the case, plaintiffs, being unable to pay the costs or give bond therefor, and there being no official court stenographer to take the note of evidence and transcribe them for the record, and the parties being unable to agree on statement of facts, the court was requested to furnish a statement of facts, which is here being furnished, based on notes taken on the trial of the case, and as the Court remembers the evidence.

"As the court views the case, the statement of facts might be best furnished by reviewing briefly what each witness testified to on matters that the court considered relevant and material and pertinent to the issues in this case.

"The plaintiffs first offered in evidence the marriage certificate, showing the marriage of Joseph DuBois and Mrs. Martha Trammell, marked P2 for identification, showing the marriage of the parties on January 20, 1892.

"Plaintiffs next offered in evidence the act of donation from Mrs. Martha A. Trammell DuBois to her minor grandchildren, marked P3 for identification, purporting to be the donation of the property involved herein, and which was dated October 17, 1913.

"The plaintiffs then had Mr. Joe Bice sworn as a witness, who testified that Joe DuBois lived with Mrs. Trammell as man and wife from 1910 until her death in 1925 or 1926. That Mrs. Trammell made application for patent in 1912, and that he assisted her and that he thought he also helped her obtain her final certificate about

the same time, which was objected to by defendants; admitted subject to objection. That Mrs. Martha A. Trammell DuBois was living on the land at the time of her death and that none of the grandchildren (meaning those named in the donation and some of whom are the defendants herein) were living on the place at the time of the death of Mrs. DuBois.

"The plaintiffs then had Mr. Henry Bice sworn as a witness, who testified that he knew the property and that none of Joe DuBois' children ever lived on the property and none of Mrs. Trammell's children ever lived on the land; that he had lived near the property since 1925.

"The plaintiffs then had Mr. Mayo Hesser sworn as a witness, who testified that the children of Joe DuBois were Louis, Johnnie, Neville and one who was called Sappy, whose exact name he did not know and who died without issue; that these were supposed to be children of Joe DuBois, but were not the issue of his marriage with Martha Trammell; that Joe DuBois and Martha Trammell (whom he married) lived together as man and wife until her death; that Ernest, who was a son of Louis Woods, lived on the place a short while after the death of Mrs. Martha Trammell DuBois; that Joe DuBois was sometimes called Woods, as the name 'DuBois' is the French for Woods.

"Mr. C. A. Rambin was then sworn and testified that Joe DuBois and Mrs. Martha Trammell DuBois were living on the place at the time of the death of Mrs. DuBois and that Henry Simms also had lived on the place.

"Plaintiffs then introduced the patent from the U. S. Government to Mrs. Martha Trammell DuBois, covering the property, dated August 19, 1913, and marked P4 for the purpose of identification, and rested the case, except in rebuttal.

"The defendants first and Mrs. Charlie Smith sworn as a witness in their behalf, who testified that he was born in 1858 and had lived near the property prior to 1901; that he had served as Sheriff of DeSoto Parish for a period of 12 years; that Mrs. Martha A. Trammell took possession of the property more than 50 years ago, when she was living with Simms, and had lived on it ever since to the date of death.

"Clyde Simms was then called and sworn as a witness for the defendants, and testified that he was a grandson of Mrs. Mar-

tha A. Trammell and a son of Henry Simms, who was her son by a prior marriage; that his grandmother died in 1925, while living on the place; that all grandchildren kept actual possession of the property after the death of their grandmother. That Joe DuBois left the place, and they took possession, the date of the burial of Mrs. Martha A. Trammell DuBois. That Joe DuBois died in 1930. That the Simms heirs paid the taxes on the land, some of which was fenced, and that they rented some of it for one-fourth the crops raised and the additional consideration of lessee looking after it. That his sister, Mrs. Burman, lived on the land three or four years ago. That Ernest Woods lived on it for a period of three months. That he moved on it as a trespasser, and afterwards rented it from them for the consideration of repairs to the house, but that he did not pay any rent or carry out his agreement and they evicted him.

"On cross-examination he testified that the Simms heirs rented the property to a Mr. Pope in 1925, on the date of the death of their grandmother, Mrs. Martha A. Trammell DuBois.

"Mr. J. W. Permenter was then sworn as a witness on behalf of the defendants and testified that he married Josie Simms. That he bought John Simm's interest on January 6, 1927; that he married Josie Simms 27 years ago. That Mrs. Martha A. Trammell DuBois died in 1925 and that the Simms heirs rented the land to a Mr. Pope on the date of her death. That the Simms heirs paid the taxes on the land and sold some timber off the land. That Ernest Woods occupied the land for a short while as renter.

"Mrs. Mazy Maydel Simms Burman was then called and sworn as a witness in behalf of the defendants and testified that her grandmother, Mrs. Martha A. Trammell DuBois, died in the year 1925, leaving the grandchildren, J. B. Simms, Josie Lee Simms, herself, Hazel Odessa Simms, Lillian Simms, Lexie Simms and Clyde Simms. That the Simms heirs had possession of the land since 1925, the date of the death of her grandmother, and had paid taxes on it and rented it to other parties. That she had lived on the land from 1929 to 1932.

"Hazel Simms was then sworn as witness for defendants and testified that her grandmother died in 1925. That the Simms heirs had had possession of the property

since and had rented it to a Mr. Pope, and would come back on visits to the place, and had paid taxes on it since the death of their grandmother and long before that.

"A Mrs. Permenter was then sworn and stated that she had lived with her grandmother, whose maiden name was Martha Trammell. That she married Richard Simms prior to the marriage to Joe DuBois, and who had died, but did not know the date of the death of Richard Simms.

"Defendants introduced two deeds, certified copies of which are in the record marked D1 and D3 for identification.

"Defendants introduced the application for entry of land, which is marked D4 for the purpose of identification.

"By agreement of counsel, there was introduced by the defendants certificate of the Sheriff of DeSoto Parish, Louisiana, and Tax Collector, showing taxes paid from the years 1925 to 1937, inclusive, which certificate is marked D2 for identification.

"Defendants then rested and there was no rebuttal testimony on behalf of the plaintiffs.

"All documentary evidence, which was introduced by the plaintiffs and defendants was duly allowed, marked and filed.

"No evidence of any nature was introduced to show who was the mother of the plaintiffs herein or that they were born of the marriage of Joe DuBois and anyone, and none of the plaintiffs acted as a witness to testify that they were the children of Joe DuBois, one witness testifying that they were supposed to be, but not naming or acquainting the court with the name of the mother of the children.

"This constitutes all of the evidence adduced on the trial of this cause, as the court remembers it, and as revealed by the notes taken by the undersigned trial Judge, and is furnished at the request of the parties and is hereby ordered filed in the record in this case as a part thereof.

"Wm. H. Ponder,
"Judge."

The exception of no cause of action was filed in the lower court after all evidence had been adduced, and defendants are re-urging that exception here. The exception is based upon the fact that plaintiffs have not made sufficient proof to support their allegation that they are "the three children and sole surviving heirs of Joe DuBois, the father of petitioners." This allegation was

denied by defendants and there **was no** proof offered to establish it.

■ Plaintiffs' title is alleged to be one by inheritance and, when defendants denied their heirship, definite proof was required of their legitimate heirship to entitle them to recover. Boykin v. Jenkins, 174 La. 335, 140 So. 495.

The exception of no cause of action **is** good and will have to be sustained.

It is unnecessary for us and we do not express any opinion on the merits of the case.

■ Plaintiffs contend that if we should find the exception good, we should follow the case of Boykin v. Jenkins, supra, and remand the case for additional testimony. Their contention would be sound if an exception of no cause of action had not been filed, and it had become necessary for us to reject their demands finally on account of failure to make the necessary proof of heirship. That was the situation in the Boykin v. Jenkins case. In that suit an exception of no cause of action was not filed.

Furthermore, in this case, plaintiffs' prayer in their petition is defective and, as stated by counsel for plaintiffs, it was due to his secretary omitting an entire sentence from a paragraph therefrom.

Defendants' counsel also seriously objects to the case being remanded for testimony as to heirship for the reason he claims he purposely omitted putting in much evidence he otherwise would have, had plaintiffs proven their heirship.

■ Plaintiffs lose no rights by the exception of no cause of action being sustained, if they should care to file another suit.

It therefore follows that the judgment of the lower court on the merits is set aside, the exception of no cause of action filed herein by defendants is sustained, and the demands of plaintiffs are rejected at their costs.